

DRAFT: 2/14/06

## CONSULTING AGREEMENT

This **CONSULTING AGREEMENT** is made as of the _13_ day of _FEB_____, 2006, by and between BPL Global Ltd., a corporation organized under the laws of the State of Delaware (the "Company") and [Dan Forey], an individual ("Consultant").

### BACKGROUND

A. The Company desires to engage Consultant to perform certain services, including without limitation those set forth on Appendix A hereto and as otherwise set forth herein;

B. The Company intends to form a wholly owned European subsidiary ("BPL Europe") as soon as practicable after the date hereof to operate in Europe, and intends to employ Consultant from and after such formation pursuant to a written agreement to be entered into among BPL Europe and Consultant, and each of the Company and Consultant desire to set forth their understanding of the terms and conditions under which Consultant shall provide services to the Company in connection with the formation and start-up of BPL Europe, and with respect to Consultant's the terms and conditions to be set forth in writing among BPL Europe and Consultant from and after formation.

C. The Company and Consultant acknowledge that Consultant will, in the performance of the Services, be in a position of trust and confidence and will learn of and have access to confidential and trade secret information, including, without limitation, proprietary information concerning the Company's technology and product development, that is a valuable asset of the Company;

**NOW, THEREFORE,** in light of these principles and intending to be legally bound, the Company and Consultant agree as follows:

1. **Engagement.** The Company hereby agrees to retain Consultant as a consultant to perform services related to establishment of BPL Europe and those typically required to set up operations and manage the Company's and/or BPL Europe's entry into the European markets, including the territory of the European Union, Switzerland and such territories as the parties may agree to add from time to time (the "Territories"), as well as the services set forth on Appendix A attached hereto, if any (collectively, the "Services"). The Services may be modified from time to time as mutually agreed by the Company and Consultant

(a) It is the intent of the parties that BPL Europe shall have the exclusive right from the Company to market the services of the Company in the Territories and that it shall be funded at the outset entirely by the Company (or as otherwise determined to be funded by the Company) consistent with the proposed BPL Europe Budget attached hereto as Appendix B (the "Budget").

(b)     Consultant shall, from the date hereof, have responsibility and authority to expend such monies as are described further in the Budget, hire and/or contract with such additional persons and take such other actions as are necessary and beneficial with respect to the establishment and commencement of operations of BPL Europe as Consultant may determine after consultation with the Company. Consultant shall report directly to the Chief Executive Officer of the Company or such other person as the board of directors of the Company shall determine.

(c)     BPL Europe shall be established such that it shall be governed, by agreement of the parties or applicable law or both in the discretion of the Company, by a board of directors or similar body with three members, one of whom shall be Consultant for so long as he is engaged or employed by the Company or BPL Europe and two of whom shall be appointed by the Company.

2.     Term. The term of this Agreement will be effective as of the date hereof and will continue in effect until the earlier of (a) the establishment of BPL Europe as an existing legal entity under the laws of the jurisdiction selected by the Company in consultation with the Consultant and the entry by Consultant into an employment or engagement agreement with BPL Europe under terms and conditions substantially similar to those set forth herein; (b) the termination of this Agreement by either party in accordance with the terms of Section 14 of this Agreement; and (c) [the first anniversary of this Agreement].

3.     Compensation.

(a)     Cash.

(i)     Monthly Fee. The Company hereby agrees that in consideration for the performance of the Services by Consultant, the Company will pay Consultant a consulting fee in the maximum amount of $157,200 per year ("Annual Amount") at the rate of $13,100 per month, payable in accordance with the Company's existing practices and subject to the provisions of Section 14.

(ii)     Bonus. Consultant shall be entitled to receive when approved for payment in the discretion of the Company a quarterly bonus of up to an aggregate annual amount of sixty percent (60%) of the Annual Amount, payable in accordance with the Company's existing practices. Further, such bonus(es) shall be subject to the following requirements:

> A.     33% of any such bonus shall be based upon the Company's overall achievement of certain financial performance targets as the Company shall determine;
>
> B.     33% of any such bonus shall be based upon BPL Europe's achievement of certain financial targets as the Company shall determine; and

-2-

        C.    33% of any such bonus shall be based upon the achievement by Consultant of such milestones as Consultant and the Company shall agree upon.

    (b)    <u>Equity in BPL Europe</u>. Additionally, the Company agrees that Consultant shall be entitled to receive options to purchase shares of equity stock or other equity interests of BPL Europe pursuant to an option agreement to be entered into in connection with the establishment of BPL Europe and the agreement between Consultant and BPL Europe contemplated by Section 2(a). Such option agreement shall provide that Consultant will receive options, subject to the vesting requirements below, to purchase an amount of equity securities such that when issued and outstanding they shall constitute not less than ten percent (10%) of all issued and outstanding equity securities of BPL Europe as of its formation [**at a price to be determined by the Company**]. Consultant agrees to be bound by the terms of any equity incentive plan of BPL Europe from which the options discussed herein may be issued.

    (i)    <u>Vesting</u>.    The options described in Section 3(b) above shall vest, commencing with the date hereof, at the rate of 1/48th per month on each monthly anniversary of the date hereof until fully vested (subject to the provisions of Section 14 hereof). The option agreement shall provide (1) that Consultant shall receive the benefit of his term of service under this Agreement with respect to the vesting of such options; (2) that all unvested options shall immediately accelerate upon a "<u>Change of Control</u>" (as that term is generally defined in the Company's 2005 Equity Incentive Plan, without regard to such plan's applicability) of the Company or of BPL Europe and (3) that Consultant will enter into, contemporaneous with such option agreement, any shareholders' agreement or similar agreement with respect to restrictions on the transfer of the options and of the underlying securities as the Company shall determine.

    4.    <u>Expenses</u>.    All expenses directly related to the formation and commencement of operations of BPL Europe shall be paid by the Company in accordance with the Budget..

    5.    <u>Consulting Relationship</u>. This Agreement is not intended to create and does not create an employment relationship between Consultant and the Company. Consultant acknowledges and agrees that by the terms of this Agreement, Consultant shall not be entitled to any of the rights or benefits which may otherwise be made available to an employee of the Company. Consultant acknowledges and agrees that Consultant is responsible for paying, and Consultant agrees to pay, any and all taxes on all amounts payable under this Agreement, and for providing himself, and any persons contracted with or hired by Consultant in connection with the Services, with any and all workers' compensation coverage, unemployment compensation or other insurance as they shall deem necessary or useful and without any liability to the Company or BPL Europe.

    6.    <u>Consultant Covenants</u>. Consultant agrees, as a condition precedent to his engagement as a consultant to the Company, as follows:

      (a)    <u>Assignment of Inventions</u>. The Consultant is entering into a Confidentiality, Trade Secrets, Non-Competition and Inventions Agreement with the Company as of the date hereof in the form attached as Appendix C.

      (b)    <u>Indemnification</u>. Consultant shall indemnify and hold the Company and BPL Europe, together with their shareholders, directors, officers, employees and agents, harmless from any loss, liability or cost arising from Consultant's performance of services under this Agreement.

    7.    <u>No Waiver or Modification</u>. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior representations and agreements, whether oral or written, and cannot be modified, changed, waived or terminated except by a writing signed by Consultant and Company. No course of conduct or trade custom or usage will in any way be used to explain, modify, amend or otherwise construe this Agreement. The word "including" means "including without limitation."

    8.    <u>Assignment</u>. This Agreement is not assignable by either party hereto without the prior written consent of the other party.

    9.    <u>Severability</u>. If any term of this Agreement or its application to any circumstances will, to any extent, be invalid or unenforceable, the remainder of this Agreement will be enforceable, and the application of such term to other circumstances or the validity or enforceability of this Agreement will not be affected thereby.

    10.    <u>Governing Law</u>. This Agreement will be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to any jurisdiction's Conflicts of Laws provision.

    11.    <u>Notices</u>. All notices or other communications required or permitted hereunder will be in writing and will be deemed given or delivered when delivered personally, by registered or certified mail, by legible facsimile transmission or by overnight courier (fare prepaid) addressed as follows:

To Company:        <u>444 Liberty Avenue</u>
                           <u>Suite 750</u>
                           <u>Pittsburgh, PA 1522</u>
                           <u>Attn: Keith Schaefer</u>
                           <u>Fax: (412) 338-0241</u>

To Consultant:      *[handwritten]* Dan Foley
                           325 Clayton St
                           Denver, CO 80206
                           U.S.A.

or to such address as such party may indicate by a notice delivered to the other party. Notice will be deemed received the same day (when delivered personally), 5 days after mailing (when sent by

registered or certified mail), or the next business day (when sent by facsimile or delivered by overnight courier). Either party to this Agreement may change its address to which all communications and notices may be sent hereunder by addressing notices of such change in the manner provided.

        12.    <u>Counterparts: Telecopy</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument. Delivery of executed signature pages by facsimile transmission will constitute effective and binding execution and delivery of this Agreement.

        13.    <u>Venue</u>. The parties consent and submit to the jurisdiction and venue of the state and federal courts sitting in Allegheny County, Pennsylvania for purposes of enforcing an arbitration award entered pursuant to the preceding sentence and for purposes of any action arising out of a breach or alleged breach of paragraph 7 of this Agreement, and irrevocably waive any objection to such venue or that any suit, action or proceeding brought in such courts has been brought in an inconvenient forum.

        14.    <u>Termination</u>. This Agreement may be terminated prior to the end of its Term (a "<u>Termination</u>") by either party upon delivery of written notice.

        (a)    <u>Effect of Termination by the Company</u>. Upon a Termination of this Agreement by the Company without Cause (as defined herein), (i) the Company shall pay to Consultant the Monthly Amount set forth in Section 3(a)(i) and (ii) options granted or otherwise to be granted to Consultant under Section 3(b) shall continue to vest notwithstanding such Termination, for a period of six (6) months afterwards.

For the purposes of this Agreement, "<u>Cause</u>" shall mean a determination by the Company that Consultant has (i) materially breached this Agreement or any agreement incorporated or referred to herein, which such breach has not been remedied by the Consultant after written notice has been provided to Consultant of such breach; (ii) engaged in disloyalty to the Company, including fraud, embezzlement, theft, commission of a felony or proven dishonesty; or (iii) engaged in willful misconduct or gross negligence.

10/19/2006 14:46 FAX 4123380241    CANON    ⌀007

IN WITNESS WHEREOF, the parties have set their hands as of the date first above written.

CONSULTANT

*[signature]*

BPL GLOBAL, LTD.

By: *[signature]*
Keith Schaefer, CEO

-6-